JAMES M. BRYANT, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 13, 1914.

1. **NEGLIGENCE: Railroads: Humanitarian Rule: Crossings.** The plaintiff, a farm laborer, sued to recover for injuries while engaged with several others in moving a hay baler over a private farm railroad crossing, without the knowledge of the owner of the adjacent farm. The baler became lodged and a person was sent each way to flag trains that might approach. A train approached but did not heed the warning. While the plaintiff was endeavoring to unhitch the mules, one of them became frightened at the train, jumped and plunged, striking the plaintiff on the knee cap, injuring him permanently. *Held*, that the court committed error in not allowing the plaintiff to prove that by use the crossing had been opened to the public and consequently the plaintiff in using it was entitled to a reasonably safe crossing, because by such refusal the plaintiff was placed on record as a trespasser, who could have no right of recovery for his injury but for the comprehensive embrace of the humanitarian doctrine which makes no distinction between invitees and trespassers.

2. ———: **Humanitarian Rule.** Although a person may be properly or unlawfully on the track of the railroad, still that fact alone will not discharge the company or its employees from the observance of due care, and they have no right to run over and kill him if they could have avoided the accident by the exercise of ordinary caution or watchfulness.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone*, Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *Edw. J. White* for appellant.

(1) There was no duty to keep a lookout for the plaintiff at the private crossing in question and it was error for the court to submit the case upon any such theory. Hoffman v. Railroad, 24 Mo. App. 546; Rayner v. Railroad, 86 Mo. App. 521; Melton v. Railroad, 99 Mo. App. 282; Atterbery v. Railroad, 110 Mo. App. 614. (2) In the use of the private road crossing on the defendant's property the plaintiff assumed the risk of any injury resulting from the ordinary use of its property by its trains, on the part of the railway company. Mann v. Railroad, 86 Mo. 347; Madison v. Railroad, 60 Mo. App. 599; Elliott on Railroads, sec. 1150, p. 1732; Isenberg v. Railroad, 33 Mo. App. 85; Stroud v. Soderer, 53 Mo. 38; Carr v. Railroad, 195 Mo. 225; Madison v. Railroad, 60 Mo. App. 599. (3) The law does not require cattle guards at private farm crossing for the reason that the duty is imposed upon the landowner to take care of such stock at such places and this emphasizes the fact that he must keep his stock off the tracks when the trains are coming and that his license to use the company's property does not require it to lookout for his stock. 3 Elliott on Railroads, sec. 1150, p. 1732; Mann v. Railroad, 86 Mo. 347; Johnson v. Railroad, 60 Am. & Eng. R. Cases 648 and note; Maxey v. Railroad, 113 Mo. 1. (4) Even if there had been any duty to keep a lookout for the plaintiff there was no evidence that the train could have been stopped at the speed it was going or anything done which was not done to prevent the alleged injury of the plaintiff. It is only where there is some negligence in the operation of railroad trains, where horses are frightened, that the railroad company is liable. Reyner v. Railroad, 86 Mo. App. 521.

*E. C. Hamilton* and *John F. Thice* for respondent.

(1) Respondent was not a trespasser as maintained by appellant, but had acquired a right to use the crossing in question by long established custom. Ahnefeld v. Railroad, 212 Mo. 299; Frye v. Railroad, 200 Mo. 400; Fearons v. Railroad, 180 Mo. 225. (2) But even though respondent were a trespasser, yet the appellant is still liable for its negligence in failing to keep a lookout, where it has reasonable grounds to anticipate the presence of persons, on or so near the track as to endanger them, irrespective of the question of contributory negligence; and the rule contended for by appellant, that its duty began only after the discovery of his peril, does not obtain in this case. Walker v. Railroad, 173 Mo. App. 81; Bennett v. Railroad, 242 Mo. 137; Mann v. Railroad, 123 Mo. App. 486-494; Ahnefeld v. Railroad, 212 Mo. 302; Murphy v. Railroad, 228 Mo. 79; Morgan v. Railroad, 159 Mo. 274-278; Frick v. Railroad, 75 Mo. 610-611. (3) The place on appellant's track where the respondent was injured was such a place, as under the humane tendency of the law with regard to those in charge of so dangerous an agency, as that here employed, would make it binding upon the appellant to keep a lookout, in anticipation of the presence of persons who were liable to be crossing. Alexander v. Railroad, not yet in print. K. C. Court of Appeals No. 10774; Hilz v. Railroad, 101 Mo. 36; Klockenbrink v. Railroad, 172 Mo. 686; Hill v. Railroad, 49 Mo. App. 533; Stillson v. Railroad, 67 Mo. 671.

JOHNSON, J.—Plaintiff was injured August 10, 1909, at a private farm crossing on defendant's railroad and brought this suit October 14, 1912, to recover his damages on the ground that they were caused by the negligence of defendant in maintaining a defective

crossing and in failing to perform the humanitarian duty it owed plaintiff to exercise reasonable care to avoid injuring him after his perilous situation was discovered or should have been discovered. The answer is a general denial and a plea of contributory negligence. Verdict and judgment were for plaintiff and defendant appealed.

Plaintiff, a farm laborer, had been baling hay and was employed by William Bridges, who owned and operated a hay baler which, at the time of the injury, was being taken by Bridges and his employees from one farm to another. The baler which was drawn by a team of mules was on a low set carriage and the distance between the front and back wheels of the carriage was twenty feet or more. A bolt in the middle of this space projected downward to a point eight or ten inches above the ground. There was a public road between the two farms, but a shorter road over an intermediate farm owned and occupied by a Mr. Beets was taken by Bridges and the injury occurred while the machine was on a private railroad crossing on that farm. On account of the long coupling of the baler and the elevation of the railroad track, the passage of the front wheels of the baler over the track and down the grade, before the hind wheels had begun the ascent to the track, brought the middle of the carriage so close to the track that the projecting bolt caught on the rail and the baler could not be moved either forward or backward by the team. Bridges sent some of the employees in both directions to flag trains that might approach, while he and the remaining employees attempted to disengage the machine from the rails by raising its rear end and moving the machine forward across the track. Before this purpose could be accomplished a freight train coming from the west appeared. Despite the efforts of the flagmen to attract his attention, the engineer failed to see either them or the obstruction on the track and the train went on without

slackening speed until it collided with the baler. While the train was bearing down on the baler, plaintiff was doing his best to unhitch the mules and lead them to a place of safety and succeeded, but in the operation one of the mules became frightened at the approaching locomotive and in jumping and plunging struck plaintiff on the knee-cap with such violence as to inflict a permanent injury.

Beets, the owner of the farm, introduced as a witness by plaintiff stated he did not know that the baler was being driven over his farm.     Plaintiff then attempted to show by him that the road over his farm and the farm crossing had been generally and continuously used by the public with his knowledge and consent and with the implied consent of the railroad company, but the court sustained defendant's objections to such evidence and so far as the record discloses the baler was being driven over the road and crossing without either the express or implied consent of the owner of the farm. The petition alleges: ''That on said farm aforesaid defendant railroad company maintained a private farm crossing; that at the times complained of and for years prior thereto said crossing was frequently used by persons engaged on the said 'Berry Beets Farm' and that teams were frequently driven across the said crossing, not alone by the owner and employees on the said farm, but that neighbors and others who so desired had permission to and did cross frequently the track of the defendant on the crossing aforesaid.''

The instructions submitted no other cause than that of negligence under the last chance rule, and authorized a verdict for plaintiff only upon a finding by the jury ''that the defendant through its agents and servants saw, or knew or by the exercise of ordinary care could have known of the dangerous and perilous

position, if any, of said Bryant in time to have avoided the injury," etc.

The crossing was on a curve and the evidence of plaintiff tends to show that it could have been seen by the engineer at a distance of about 400 feet. Employees sent back to flag the train testified to signaling the engineer and that on finding their signals disregarded they ran along the engine opposite the cab, shouting and throwing gravel into the cab window. From their testimony it appears that the speed of the train was not over twenty or twenty-five miles per hour. No expert evidence was introduced on the subject of the distance in which the train could have been stopped under the circumstances described. The principal contention of defendant is that plaintiff failed to make a case to go to the jury and that its demurrer to the evidence should have been given. There is some evidence in the record tending to show that the crossing was in a defective condition, but if such were the fact, it could give plaintiff no cause of action in the absence of proof of such user of the crossing by the public as would imply that it was being so used with the knowledge and acquiescence of the owner of the farm and of the railroad company. If the company had been recognizing the farm crossing as a public crossing and the public had been using it as such, the company owed the public the duty of maintaining it in a reasonably safe condition, but as to a farm crossing not so used, the company would owe no duty to maintain it in repair to anyone but the owner of the farm, his family and servants. [Mann v. Railway, 86 Mo. 347; Madison v. Railway, 60 Mo. App. 599; 3 Elliott on Railroads, sec. 1150.] A licensee going upon the property of another for his own convenience assumes all obvious and patent risks of such use. [Isenberg v. Railway, 33 Mo. App. 85; Stroud v. Soderer, 53 Mo. 38; Carr v. Railway, 195 Mo. 225.] And it cannot be said that his licensor owes a duty towards him to

exercise care to keep the premises in reasonably safe condition for his use. So far as the evidence discloses plaintiff was not even a bare licensee of the owner of the farm but was a trespasser to whom neither the owner nor the railroad company owed any duty with respect to the maintenance of the crossing in a proper condition. All the facts show that the perilous situation in which he found himself was not caused by any negligent breach of duty on the part of defendant.

The most difficult question presented by the demurrer to the evidence is whether, considering that plaintiff was a trespasser for whose perilous situation defendant in no manner was responsible, has he, nevertheless, a cause of action inuring to him from the obvious failure of the engineer to be on the lookout for him? There is no room in the evidence for the conclusion that the engineer saw the obstruction on the crossing and the dangerous situation of the men around it and then willfully or wantonly frightened the mules and collided with the baler. And unless he was under a duty to be on the lookout at that place and negligently failed to perform that duty plaintiff cannot recover under the humanitarian rule. In Alexander v. Railway (decided at this term), we held that "though it may not be the duty of the railroad company to give warning of the approach of his train at a farm crossing (Maxey v. Railroad, 113 Mo. 1), still we may assume that as the adjacent owner has the right to use and must be expected to use and is not a trespasser in using a farm crossing which has been put in for his convenience, the railway servants in charge of its engine ought to be required to be on the lookout for him. [Bishop v. Railway, 4 N. D. 536; Railway v. Conlon, 9 Kansas App. 116.]" At places where the engineer has no reason to look for persons on the track, he owes no duty to trespassers to be on the lookout for them, but as is said by the Supreme Court in Fearons v. Railway, 180 Mo. l. c. 223: ". . . the

operatives of a railway are entitled to the presumption that there is a clear track and while care and caution should be exercised in the operation of their trains, they are not responsible to trespassers for failure to be on the alert to discover them, in the absence of any reasonable grounds for the expectation or anticipation of their presence on the track. In other words, they are not specially required to look out for persons who have no right to be there and whose presence was neither expected or anticipated. Under those circumstances, the liability results from a wanton and reckless injury inflicted, after the discovery of their presence. But, again, if it is at a point where there is reasonable ground for expecting or anticipating the presence of persons, the presumption of a clear track is destroyed, and even though the persons be trespassers, it does not relieve those in charge of the moving cars from keeping a careful lookout for the person so expected to be present at that point.''

To the same effect are the later cases of Ahnfeldt v. Railroad, 212 Mo. l. c. 302, and Murphy v. Railroad, 228 Mo. l. c. 79. In the latter case it is said: ''Although a person may be improperly or unlawfully on the track of the railroad, still that fact alone will not discharge the company or its employees from the observance of due care, and they have no right to run over and kill him if they could have avoided the accident by the exercise of ordinary caution or watchfulness.''

We recognized and applied the same principle in Mann v. Railway, 123 Mo. App. l. c. 486. The pertinent rule thus may be stated: Where the engineer of a train is under duty to be on the lookout for any person or persons at a particular place the beneficent objects of the humanitarian doctrine require him to perform that duty towards all persons who may be on the track at that place and whose safety would be imperilled if the duty is not performed, regardless of

whether such persons are rightfully or wrongfully on the track or are conducting themselves carefully or negligently. The humanitarian principle takes no thought of the cause of the danger to human life but says to the operators of the train, if you have reasonable ground to anticipate that any person would be at that place upon the track, it is your duty to keep a lookout for that place and to exercise every reasonable effort to avoid injuring anyone there in peril of being injured by your train and oblivious to his peril. Plaintiff was entitled to go to the jury on the issue of negligence under the humanitarian rule.

We do not sanction the contention of defendant that the record is barren of proof that the frightening of the mules could not have been avoided by stopping the train. Under all the facts and circumstances disclosed it seems reasonable to infer that had the engineer been on the lookout he could have avoided the injury. The omission of plaintiff to offer any evidence on the subject of the distance in which the train could have been stopped did not amount to a failure of proof, and with the facts and circumstances before them which raised a debatable issue, the jury were entitled to draw their own conclusions respecting the issue of whether or not the injury could have been avoided by the observance of reasonable care on the part of the engineer.

As we have stated, the petition alleged and plaintiff offered to prove that by user the crossing had been opened to the public and consequently that plaintiff was lawfully using it and was entitled to a reasonably safe crossing. The court committed error against plaintiff in refusing to receive such evidence. If defendant had by acquiescence in the public user impliedly invited its continuance, the duty rested on defendant to exercise reasonable care to keep the crossing in a reasonably safe condition for such use, and proof of a negligent breach of that duty would entitle

plaintiff to go to the jury on the first of his pleaded causes. Plaintiff did not appeal and therefore is in no position to complain of this error which was against him, but since the error, as we have shown, placed him on the record in the position of a trespasser to whom defendant owed no duty with respect to maintaining a safe crossing, we are compelled to take him in that position and cannot regard him otherwise than as a trespasser who could have no right of recovery for his injury but for the comprehensive embrace of the humanitarian principle which makes no distinction between invitees and trespassers. With plaintiff in such position the conclusion is inevitable that the court committed prejudicial error against defendant in admitting evidence over its objection which tended to show negligence of defendant in failing to keep the crossing in proper repair and in so ruling the court erroneously admitted proof of the breach of a duty defendant owed only to those entitled to use the crossing but not to trespassers or even to licensees. The error was emphasized in the argument to the jury of counsel for plaintiff wherein the evidence was referred to in a manner to connect it with the issues submitted in the instructions. For this error the judgment is reversed and the cause remanded.

All concur.